## COMMONWEALTH *vs.* JOHN W. SNOW.

Worcester. September 29. — October 22, 1874. COLT & MORTON, JJ., absent.

An indictment alleged that A. at a time and place stated " in and upon one B. then and there being pregnant with child, unlawfully did make an assault, and a certain instrument, the name of which is to the jurors unknown, up and into the womb and body of the said B. unlawfully did force and thrust, with intent then, there and thereby to cause and procure the said B. to miscarry, abort and to bring forth the said child of which she was pregnant as aforesaid, and to kill and murder said child, by reason," &c. *Held,* that whether it was intended to charge an assault with intent to commit a felony, under the Gen. Sts. *c.* 160, § 33, or an intent to procure miscarriage of a woman, under the Gen. Sts. *c.* 165, § 9, yet as the bill of exceptions stated it to be an indictment for procuring an abortion, it must be so regarded in this court. *Held, also,* that the allegation as to the time and place of the offence applied to the particular acts set forth as the means by which the abortion was alleged to be performed, as well as to the alleged assault. *Held, also,* that the instrument and the means by which it was used were sufficiently described. *Held, also,* that it was not necessary to prove an assault, or an intent to kill the child, and that the defendant might be convicted although the woman consented.

At the trial of an indictment on the Gen. Sts. *c.* 165, § 9, for procuring an abortion, two of the witnesses for the government testified, with great particularity, that the act was performed at a place stated on a certain day named in the indictment. The remaining witness stated that it was on or about that day, that he was not sure of the date. The defendant introduced evidence tending to show that on

this day, the day before and the day after, he was one hundred miles away from the place named. The defendant requested the court to instruct the jury "that there was no evidence in the case which would warrant the jury in finding that the defendant did the act complained of upon any other day than the day named in the indictment, and if the jury are satisfied that the defendant did not do the act upon that day, that they cannot convict." The judge declined to give this instruction, and instructed the jury that it need not be proved that the offence was committed on the exact day alleged; that if the jury found that the witnesses for the government were in error as to the date, this might be considered upon the question of the degree of credit they were entitled to, and that if the jury were not satisfied beyond doubt that the defendant performed the operation as alleged, they should acquit him. *Held*, that the defendant had no ground of exception.

INDICTMENT averring that the defendant on May 20, 1873, " at Athol in the county of Worcester, in and upon one Eliza A. Flint, then and there being pregnant with child, unlawfully did make an assault, and a certain instrument, the name of which is to the jurors unknown, up and into the womb and body of the said Flint unlawfully did force and thrust, with intent then, there and thereby to cause and procure the said Flint to miscarry, abort and to bring forth the said child of which she was pregnant as aforesaid, and to kill and murder said child, by reason and means of which said last mentioned premises, the said child was killed and its life destroyed in its mother's womb, and she, the said Flint, afterwards, to wit, on the twenty-seventh day of May, in the year eighteen hundred and seventy-three, miscarried, and was aborted and delivered of the said child, the sex thereof being to the jurors unknown, said child being at the time of its birth dead."

In the Superior Court, before the jury were empanelled, the defendant filed a motion to quash, and assigned the following grounds :

"1. There is no allegation in the indictment of the time when, and the place where the instrument mentioned in the indictment was unlawfully used.

" 2. There is no sufficient description of the instrument alleged to have been used.

" 3. There is no allegation of the means or manner in which said instrument was used, whether with the hand or hands of the defendant or otherwise.

" 4. There is no averment of time and place when and where the defendant entertained the intent to cause and procure the miscarriage of the said Eliza A. Flint.

" 5. The indictment is bad for duplicity, in that it charges that the acts alleged to have been done by the defendant were done with the intent first to procure the miscarriage of the said Eliza Flint, and second because it is alleged they were done with intent to kill and murder said child.

" 6. As an indictment charging the acts to have been done with intent to kill and murder said child, it is bad, because there is no averment therein that at the time of doing the acts alleged said child was quick in its mother's womb.

" 7. The indictment is uncertain in that it does not plainly, formally and substantially set forth whether said child was killed by the acts alleged to have been done, or by the intent with which they were done.

" 8. The indictment is in other respects fatally defective and insufficient in that it does not plainly, formally and substantially set forth any offence in accordance with the rules of criminal pleading."

This motion *Dewey*, J., overruled, and the defendant alleged exceptions. The case was then tried, the jury returned a verdict of guilty, and the following bill of exceptions was allowed :

" This was an indictment for procuring an abortion, which indictment is to be referred to and made part of the bill of exceptions.

" At the trial, Eliza A. Flint, the woman upon whom the alleged abortion was performed was called as a witness for the government, and among other things testified that the operation was performed upon her by the defendant at Athol, May 20, 1873 ; that she knew it was upon that day ; that she set it down upon her diary upon the evening of that day or the next morning ; that she had seen the memorandum upon her diary a number of times since then, the last time within a week prior to her testimony , that the operation was performed by the defendant, by his inserting or thrusting some kind of an instrument up into her body and womb ; that she did not see the instrument distinctly, and could give no farther account of it, and that the operation was performed upon her by her procurement and consent. That she was taken very sick on Monday night, June 2, about three o'clock, and between eight and nine that morning the child was delivered ; that it was a week after the operation that the child was

delivered; the child was not living at delivery; she had been pregnant three or four months.

"Sarah Flint, a sister of the last witness, was called as a witness for the government, and testified, among other things, that her sister Eliza went away from her home on May 20, 1873, between one and two o'clock in the afternoon, for the purpose of having an operation performed upon her to procure an abortion, and returned in the evening and informed her that she had had the operation performed; that she was confident it was on May 20; that she recollected perfectly well that it was that day; that her sister was taken very sick just one week after the operation had been performed, about three o'clock in the night, and between eight and nine in the morning the child was delivered; that she was in the room at the time, and the child was not alive.

"Dr. Russell, a physician, was also called by the government, and testified, among other things, that he was called to attend upon said Eliza, May 29, but was absent, and his assistant, Dr. Williams, attended her; that he himself saw her on Sunday, June 1; examined her then and found a good deal of fever. She was pale, weak, and had lost a good deal of blood; that he did not at that time make an internal examination, but did so about a week after; that he was well convinced what was the trouble at his first visit; that he found by inserting his finger into her vagina the womb inflamed and swollen; that the swelling was confined mainly to the left side; that his examination was not such as to enable him to see the womb, but his opinion was that said swelling and inflammation were occasioned by an injury to the womb, which injury he thought was a puncture.

"James Teel, was also called as a witness for the government, and, among other things, testified that the said Eliza was gotten in the family way by himself, and that he took her to Athol on or about May 20, 1873; that he was not sure of the date, and that the defendant performed an operation upon her to procure an abortion with an instrument; that he saw an instrument in the defendant's hand about six or eight inches long, but that he could not tell whether it was a blunt instrument or a sharp instrument; it was a long lance-like, slim instrument.

"This was all the evidence there was in the case as to the time when, or the instrument with which the operation was performed.

Eliza A. Flint and Teel testified fully as to the conversation between them and the defendant, and as to what took place at his rooms at the time of the said operation.

" The defendant introduced testimony tending to show that upon May 19, 20 and 21, 1873, he was not in Athol, but in Norwich, Vt., a distance of more than a hundred miles therefrom, and asked the court to instruct the jury as follows :

"1. That they must be satisfied that the instrument with which said operation was performed was a sharp instrument. That there was no evidence in the case, either directly or from which the jury would be authorized to infer that the instrument with which the act was done was a sharp instrument.

" 2. That in order to a conviction, it was necessary for the government to prove that the defendant made an assault upon the said Eliza A. Flint.

" 3. That there was no evidence in the case which would warrant the jury in finding that the defendant did the act complained of upon any other day than May 20, 1873, and if the jury are satisfied that the defendant did not do the act upon that day that they cannot convict.

" 4. That it was necessary for the government to prove that the defendant did the act complained of with the intent not only to procure a miscarriage, but also with the intent to kill and murder the child with which the woman was pregnant.

" The court refused to give the above requests of the defendant, but gave the following instructions in relation to the matters referred to in his requests :

" 1. That in order to authorize a conviction the jury must be satisfied that there was an operation performed upon Eliza A. Flint by the defendant, by thrusting an instrument up into her body and into her womb, with intent unlawfully thereby to procure her miscarriage, she being pregnant.

" 2. That if the defendant unlawfully used said instrument as alleged, for the purpose of procuring her miscarriage, it is sufficient to authorize his conviction under this indictment, though the jury are satisfied that the operation was performed by her procurement and with her consent, and that the evidence showed it was with her consent.

" 3. In relation to the allegation as to the day, the court instructed the jury, that it was not necessary that it should be proved that the acts complained of were on the day alleged ; that the exact day was not material ; and if the jury were satisfied that the defendant performed the operation on any day in the month of May, it was sufficient as far as the day was material ; that if the jury were satisfied that the witnesses for the government were in error as to the date stated by them, this was a proper matter to be considered upon the question of the degree of credit they were entitled to as to other matters ; and if this, either alone or in connection with other evidence, caused the jury so far to doubt as to their truth and the reliability of their testimony in other matters, that they were not satisfied beyond doubt that the defendant did perform the operation as alleged, then they should acquit the defendant.

" 4. That it was not necessary for the government to prove that the act complained of was performed with the intention by the defendant to kill and murder the child ; it was sufficient if it was done in the manner alleged, with intent to procure a miscarriage unlawfully."

The defendant alleged exceptions.

*G. F. Verry,* (*F. A. Gaskill* with him,) for the defendant. 1. Every allegation, whether necessary or not, which is descriptive of the identity of that which is legally essential to the charge, must be proved. It was not necessary to allege an assault in the indictment in this case ; but as the essential charge, to wit, the use of the instrument, is alleged to have been made with an assault, and as the only allegation of time and place is in connection with the assault, it must follow that the allegation of an assault cannot be rejected as surplusage because it is descriptive of the essential charge ; or, if it may be rejected as surplusage, then the essential charge fails for want of an allegation of time and place. The government proved with certainty that the act complained of was committed on the 20th of May. The defendant has the right to assume that it was also proved by him that he did not do the act if it was done on that day. There being no evidence in the case that would authorize the jury to find it was done on any other day, the defendant was entitled to some appropriate instruction from the court to the jury on this point. There is nc

allegation of time and place unless there is an assault. Here there was no assault. *Commonwealth* v. *Wellington*, 7 Allen, 299.

2. The ruling asked for by the third prayer for instructions sufficiently indicated the proposition upon which the defendant desired the jury to be informed, and stated in sufficiently accurate terms the law applicable to the case. No instructions on the point were given, but what was said in response to this prayer would naturally tend to divert the minds of the jury from the true issue. It had not been contended by the defendant that it was necessary to prove the commission of the offence upon the day alleged, and the instruction given not only did not meet the defendant's claim or do justice to his position, but tended to mislead the jury by turning their attention from the true proposition, to wit, whether it was necessary for them to find the offence to have been committed upon the day proved. The further instruction, that if the jury were satisfied that the witnesses for the government were in error as to the date stated by them, this was a proper matter to be considered by them as affecting their credit, is inaccurate, because an honest mistake of a witness as to the day upon which an event happened may have some tendency to impeach his recollection, but not his credit; and it did not meet the case ; because the evidence was clear and conclusive as to the day, and left no room for doubt, and the witnesses were more likely to be mistaken as to the identity of a man whom they did not know, and had never seen, than as to the day. The jury should have been instructed that if they were satisfied that the operation was performed in Athol on May 20, and were also satisfied that the defendant was not in Athol at the time the operation was performed, they must acquit.

*C. R. Train*, Attorney General, for the Commonwealth.

WELLS, J. It might be difficult to determine, from the form of the indictment, whether it was intended to charge an assault with intent to commit a felony, under the Gen. Sts. *c.* 160, § 33, as is contended by the Attorney General ; or an offence under the Gen. Sts. *c.* 165, § 9. But as it is stated in the bill of exceptions to be " an indictment for procuring an abortion," we must assume that it was so treated at the trial. No objection on account of duplicity in this particular was made at the trial, or in the motion to quash, and it is therefore not open now.

The objection, made in the motion to quash, on account of duplicity in charging both an intent to procure a miscarriage and an intent to kill and murder the child, and also those to the insufficiency of the allegations for an indictment in the latter aspect, are not insisted on here.

Upon his motion to quash the defendant insists that there is no allegation of time and place, when and where the offence was committed. But the fair and reasonable construction of the language of the indictment appears to us to be that the time and place set forth, at which the assault is alleged to have been committed, extends equally to the particular acts set forth as means by which the abortion is alleged to have been accomplished, and which constituted what is called an assault.

The objection that there is no sufficient description of the instrument alleged to have been used, and of the means by which or manner in which it was used, does not appear to us to be well founded, and is not pressed in argument here.

The same remark will dispose of the defendant's prayer for instructions in relation to the character of the instrument used.

The second prayer, that it was necessary to prove an assault, was properly refused ; and the instruction that the defendant might be convicted although the operation was performed by the procurement and consent of the woman, was rightly given. The act is made criminal without regard to the consent of the person upon whom it is performed. The allegation of an assault is in no sense descriptive of the offence, or of the acts which constitute the offence. It may be rejected as surplusage. The same is true of the allegation of intent to kill and murder the child.

The main question arises upon the instructions asked for, and those given upon the evidence offered to prove an alibi. Witnesses for the prosecution testified with great particularity and confidence, that the operation was performed at Athol, on the 20th day of May, 1873 ; and the woman upon whom it was performed testified that she made an entry of the date in her diary on the evening of the same day or the morning of the next day, and had examined the memorandum since, and shortly before the trial. There was no testimony as to any other date. The defendant introduced testimony tending to show that on the 19th, 20th and 21st days of May 1873, he was in Norwich, Vt., more

than a hundred miles distant from Athol ; and asked the court to instruct the jury " that there was no evidence in the case which would warrant the jury in finding that the defendant did the act complained of upon any other day than May 20, 1873 ; and if the jury are satisfied that the defendant did not do the act upon that day they cannot convict."

This instruction the court refused to give, and instructed the jury that the exact day was not material ; that " if the jury were satisfied that the witnesses for the government were in error as to the date stated by them, this was a proper matter to be considered upon the question of the degree of credit they were entitled to as to other matters ; and if this, either alone or in connection with other evidence, caused the jury so far to doubt as to their truth and the reliability of their testimony in other matters, that they were not satisfied beyond doubt that the defendant did perform the operation as alleged, then they should acquit the defendant."

These rulings and instructions were right. If the alibi was satisfactorily proved, it was for the jury to say what effect it ought to have upon the testimony of the witnesses for the prosecution. It might discredit them altogether. If it did not have that effect, then it required an inference of some mistake on their part either as to the person who performed the operation, or the true date of its performance. Their testimony was no more positive as to the date than it was as to the person ; and they were at least quite as liable to have made a mistake as to the true date, as they were in regard to the identity of the person. But in any aspect it was entirely a question of fact for the jury, and was rightly left to them to decide. *Exceptions overruled.*