# DECISIONS

OF THE

# Supreme Court of Florida.

## JUNE TERM, 1903.

FREDERICK N. WEIGHTNOVEL, *Plaintiff in Error,* v. THE
STATE OF FLORIDA, *Defendant in Error.*

CRIMINAL LAW—MANSLAUGHTER, RESULTING FROM ATTEMPT TO
PROCURE MISCARRIAGE OF WOMAN—INDICTMENT—EVIDENCE—
SIGNING CHARGES.

1. An information that charges that the named defendant, "with
force and arms, at and in the county of Hillsborough and State
aforesaid, in and upon one Irene Randall did then and there
unlawfully, feloniously and wilfully make an assault, and did
then and there thrust and strike a certain instrument, a more
particular description of which instrument is to the solicitor
aforesaid unknown, which he the said Frederick N. Weightnovel
then and there held in his right hand, up and into the body and
womb of one Irene Randall, with the criminal intent then and
there to cause the said Irene Randall to miscarry, the same not
being then and there necessary to preserve the life of the said
Irene Randall, nor had two physicians advised the same to be
necessary to preserve the life of the said Irene Randall, thereby
then and there inflicting on the said Irene Randall, in and about
her womb and other internal parts certain mortal bruises, wounds
and lacerations, and creating in the said Irene Randall a mortal
sickness and feebleness of body, of which mortal bruises,
wounds, lacerations, sickness and feebleness of body the said
Irene Randall did then and there languish, and thence contin-
ually languished until on the twelfth day of June in the year of
our Lord one thousand nine hundred and two, the said Irene
Randall did then and there die," is sufficient to charge the
crime of manslaughter under our general statute defining man-
slaughter, section 2384, Revised Statutes; and it sufficiently

46 Fla.—2

Weightnovel v. State.—Syllabus.

charges the person slain to have been a woman in its use of the pronoun "her" and in the female name it assigns to her, and in its allegation that the wounds were inflicted on the "womb."

2. Declarations of the deceased prior to her death relative to matters pertinent to the issues on trial that tend to show the defendant's guilt, are admissible in evidence when such declarations were made in the presence and hearing of the defendant.

3. Declarations of the deceased, not made in the presence of the accused, relative to past transactions, and that are not made under circumstances rendering them admissible as dying declarations, are hearsay, and not admissible as evidence.

4. The deceased, shortly after her arrival at defendant's house where she died, and prior to the performance of any criminal operation on her for the procurement of a miscarriage, told a witness to telegraph to a distant point for her trunk, and that she was going to remain at the defendant's place to be treated and to have her child removed from her. *Held,* That this evidence was part of the *res gestae,* and was admissible, though not made in defendant's presence, not for the purpose of proving the substantive fact that the defendant committed the crime, but for the purpose of showing willingness on the part of the deceased to have a criminal operation performed on herself, and of the existence of an opportunity for the defendant to perform it.

5. Declarations of the deceased that would not be admissible in evidence unless made in the presence and hearing of the accused should be clearly and satisfactorily shown to have been made in his presence and hearing before being admitted, and the fact as to whether they were so made in his presence and hearing is a preliminary one for the *court,* and not for the jury, to decide before their admission.

6. Evidence that tends to show a disposition on the part of the accused to conceal the crime and to stop public enquiry, is admissible.

7. Since the adoption of our Revised Statutes in 1892 the *sealing* of charges by trial judges is no longer required. Trial judges should, in compliance with the statute, *officially sign* the instructions, but where there is no complaint or exception against their failure to do so until *after verdict* the irregularity is waived and is not available on writ of error.

8. The correct and better practice is for trial judges to *designate
by number* each separate charge.

9. Where there is no other evidence in the record of the truth
or existence of an asserted fact than its assertion as a fact in a
motion for a new trial it can not be considered by an appellate
court.

This case was decided by Division A.

Writ of error to the Criminal Court of Record for
Hillsborough county.

The facts in the case are stated in the opinion of the
court.

*M. Henry Cohen* and *Thomas Palmer* for plaintiff in
error.

*J. B. Whitfield,* Attorney-General, for the State.

TAYLOR, C. J.—The plaintiff in error was tried, con-
victed and sentenced in the Criminal Court of Record for
Hillsborough county in January, 1903, upon an informa-
tion filed by the county solicitor, of the crime of manslaugh-
ter, and seeks reversal here by writ of error. The informa-
tion contains two counts, but the defendant was formally
acquitted of the charge laid in the second count, so that said
second count is entirely eliminated from the case.

The first count, upon which the conviction was had,
omitting its formal commencement, is as follows: "That
Frederick N. Weightnovel, late of the county of Hills-
borough aforesaid, in the State aforesaid, on the sixth day
of June, in the year of our Lord one thousand nine hundred
and two, with force and arms, at and in the county of
Hillsborough aforesaid, and State aforesaid, in and upon
one Irene Randall did then and there unlawfully, feloniously
and wilfully make an assault and did then and there thrust

and strike a certain instrument, a more particular description of which instrument is to the said Frank M. Simonton, solicitor aforesaid, unknown, which he, the said Frederick N. Weightnovel, then and there held in his right hand, up and into the body and womb of one Irene Randall, with the criminal intent then and there to cause the said Irene Randall to miscarry, the same not being then and there necessary to preserve the life of the said Irene Randall, nor had two physicians advised the same to be necessary to preserve the life of the said Irene Randall, thereby then and there inflicting on the said Irene Randall, in and about her womb and other internal parts certain mortal bruises, wounds and lacerations, and creating in the said Irene Randall a mortal sickness and feebleness of body, of which mortal bruises, wounds, lacerations, sickness and feebleness of body the said Irene Randall did then and there languish, and thence continually languished until on the 12th day of June, in the year of our Lord one thousand nine hundred and two, the said Irene Randall did then and there die. And so the said Frederick N. Weightnovel did, in manner and form aforesaid, feloniously and unlawfully kill and slay the said Irene Randall, against the form of the statute in such case made and provided," etc.

The first, second, third, fifth, sixth, seventh and ninth assignments of error are as follows, the fourth and eighth assignments being expressly abandoned:

*First.* That the first count of the information in this cause upon which he was convicted is insufficient in this, that the information does not properly describe the offense of which the plaintiff in error was convicted.

*Second.* That the said count of said information is insufficient and illegal, in that it charges the plaintiff in error with the crime of manslaughter in the alleged killing of one Irene Randall while attempting to perform an abortion or miscarriage upon her, although the statutes of this State provide a specific and adequate punishment for the crime

of abortion, and the plaintiff in error cannot be legally tried and convicted of the crime of manslaughter upon an information alleging the death of a woman as the result of an abortion.

*Third.* That the said count of said information is vague and indefinite, and does not charge the commission of any offense, in that it alleges an assault under such circumstances which prove conclusively that the person assaulted consented thereto, and further alleges that the plaintiff in error assaulted the said Irene Randall with specific intent to cause the said Irene Randall to miscarry, which allegation can form no part of a charge of assault under the laws of this State.

*Fifth.* That the said count of said information is illegal and defective in that it alleges that the operation performed upon Irene Randall by the plaintiff in error was not necessary to preserve her life and was not advised by two physicians as being so necessary to preserve her life, both of which allegations are improper and illegal and is totally at variance with the charge of manslaughter.

*Sixth.* That the first said count of said information is bad for duplicity in that it alleges the ingredients of two distinct crimes under the statute of Florida, to-wit: manslaughter and the crime of abortion.

*Seventh.* That the said first count of said information is so vague, indefinite and uncertain as to not put the plaintiff in error on notice of the charge he was expected to meet, in that the said count alleges that the plaintiff in error assaulted the said Irene Randall with an instrument for the purpose of causing the said Irene Randall to miscarry, and does not allege of what she was expected to miscarry, or that she was in any condition to miscarry at all, nor does the said count allege that she was a woman, or that she was pregnant.

*Ninth.* That the conviction of the plaintiff in error upon the first count of said information was improper and

illegal, in that the count does not make or constitute a charge of the violation of any of the laws of the State of Florida.

These assignments do not expressly complain of any ruling made by the court below in the case, but in the form in which they are presented here have the appearance of an assault upon the information upon which the defendant was tried and convicted made in this court for the first time. This is unusual and contrary to the customary practice in such cases. But, however this may be, we find in the record a motion in arrest of judgment based upon substantially the same grounds formulated above as assignments of error, which motion was denied by the trial court, and we will treat the above enumerated assignments of error as a complaint against this ruling upon the defendant's motion in arrest of judgment, though it would have been more in consonance with correct practice, and would have conserved the purposes of brevity, to have condensed the seven quoted assignments into one, simply assigning as error the denial of the defendant's motion in arrest of judgment.

We do not think the first count of the information is defective or subject to the criticisms advanced against it in the motion in arrest of judgment. But we think the count sufficiently charges the crime of manslaughter under the provisions of section 2384 of our Revised Statutes, which is as follows: "The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this article, shall be deemed manslaughter, and shall be punished," etc.

The alleged acts of the defendant with the alleged intent to procure the deceased to miscarry, under the circumstances alleged, are made unlawful by the provisions of section 2618 of the Revised Statutes, that provides as follows: "Whoever with intent to procure miscarriage of any

woman unlawfully administers to her, or advises or prescribes for her, or causes to be taken by her, any poison, drug, medicine or other noxious thing, or unlawfully uses any instrument or other means whatever with the like intent, or with the like intent aids or assists therein, shall, if the woman does not die in consequence thereof, be punished by imprisonment in the State prison," etc.

Under the latter statute we have held in *Eggart v. State,* 40 Fla. 527, 25 South. Rep. 144, that it was immaterial whether the female was actually *enciente* or not, and that it was unnecessary to allege or prove such fact. It is true as contended that the information does not in express terms directly allege that the deceased was a female or woman, but the name "Irene" and the feminine pronoun "her" used in the information directly apply to a woman, and besides this it is alleged that the wounds were inflicted upon the "womb" of the deceased, which is a part of the human anatomy possessed by the females thereof alone. This is a sufficient allegation of the fact that the deceased was a woman. *Barker v. State,* 40 Fla. 178, 24 South. Rep. 69; *Commonwealth v. Boynton,* 116 Mass. 343.

Murder in the third degree is defined by section 2380, Revised Statutes, as follows: "The unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the commission of any felony, other than arson, rape, robbery or burglary, it shall be murder in the third degree, and shall be punished," etc. But the acts charged in the said count of the information can hardly be classed as murder in the third degree or in any of the other statutory degrees of murder without convicting the legislature of the gross inconsistency of creating the crime of murder out of the unintentional killing of a woman, not pregnant with a quick child, in an attempt to procure a simple miscarriage of such woman, when by the provisions of section 2387, Revised Statutes, it is made manslaughter only to cause the death of a woman pregnant

with a quick child where the intent was to abort or destroy such child. We are not justified in so construing the statutes as to bring about so absurdly inconsistent a result. But we are satisfied, as before stated, that the crime of manslaughter is sufficiently alleged in the said count of the information under the provisions of the quoted section, 2384, of the Revised Statutes. The information is not, however, sufficient to charge, and does not charge, manslaughter under the provisions of section 2387 of the Revised Statutes, for the reason that it does not allege the woman therein named to have been "pregnant with a quick child," and because it does not allege that the acts performed upon her were done "with intent to destroy such child." *State v. Emerich,* 87 Mo. 110, S. C. 13 Mo. App. 492; *People v. Olmstead,* 30 Mich. 431.

The eleventh and thirteenth assignments of error are expressly abandoned.

The tenth and twelfth assignments question the sufficiency of the evidence to support the verdict, and will be disposed of last.

B. G. Abernethy, a physician who was called in to see and attend the deceased shortly before her death, was introduced as a witness for the prosecution and was asked the following question, after having stated that he found the deceased lying on a bed in a room at the defendant's house: *Q.* State the condition of that bed, and the young lady that you found on that bed at the time he (the defendant) took you to the door. This question was objected to by the defendant as being immaterial and irrelevant. The objection was overruled and this ruling constitutes the fourteenth assignment of error. There was no error in such ruling. The bed occupied by the deceased, from its condition, may have furnished mute but highly pertinent and material evidence of the commission of the crime charged, and it was entirely proper to elicit such evidence, if present, by the question propounded. So, too, with reference to

the condition in which the witness found the deceased. Her condition at that time went to the core of the issue on trial and it was perfectly proper to inquire, as was done, as to such condition.

The same witness was then asked the following question: Q. Was there any attendant or any one with that young lady that you found in the room? The defendant objected to this question as being immaterial and irrelevant, but the objection was overruled, and such ruling constitutes the fifteenth assignment of error. There was no error here. Parties do not generally court the presence of witnesses to secret crimes, and the absence of attendants, who might become troublesome witnesses, had a tendency to point to the guilt of the accused, and was a circumstance proper to be shown in connection with the other facts and circumstances attending the case.

The same witness was then asked the following question: Q. Go on and state what she (the deceased) said to you and what you said to her concerning her condition in the presence of Dr. Weightnovel (the defendant). The defendant objected on the ground that it was immaterial and irrelevant, and because it would be hearsay evidence; the objection was overruled and such ruling is assigned as the sixteenth error. There was no error here. The question sought to elicit pertinent evidence and was expressly confined to utterances of the deceased made in the *presence of the defendant* relative to her then condition.

The same witness, after testifying to having examined the deceased and finding that she had blood poisoning caused in part by the presence in the womb of a part of the *placenta* or after-birth in a decaying condition, and that after stating to the defendant that it would be necessary to *curette* or scrape out the uterus, he asked the defendant if he had any instrument that had a *curette,* and that the defendant had taken him to his room and took from a drawer a *currette,* was asked the following question: Q. Describe

the instrument that he took out when you asked for it. The question was objected to by the defendant on the ground of irrelevancy and immateriality. This objection was overruled and such ruling is assigned as the seventeenth error. We fail to see the pertinency of this question, but taken in connection with the answer of the witness to it, it appears to be so devoid of materiality as to be incapable of either aid to the prosecution or harm to the defendant, and was, therefore, harmless error.

The same witness, after having testified that he went from the defendant's house to his own office and there obtained some instruments to be used in an effort to relieve the deceased, and that he went back to the defendant's house on his second visit to the deceased, was asked the following question: *Q.* Now, at that time when you went there, did you have any talk with the girl as to what had produced her then physical condition—if so, go on and state it to the jury. The defendant objected to this question on the grounds that it was immaterial, irrelevant and hearsay, and not shown to have been made under the proper safeguards of a dying declaration. These objections were overruled, the ruling was duly excepted to and is assigned as the eighteenth error. The witness then answered as follows: *A.* Well, I went back the second time to do this operation. I asked the young lady how long she had been there, and she said that she came there about two weeks ago, as I understood her, for Dr. Weightnovel's treatment, and that the week before that, a week from that time, she had had a miscarriage; said for a day or two she did 'very well, and then she became sick and grew rapidly worse.

This assignment is well taken. It does not appear either from the question propounded or from the answer thereto that the defendant was present at the time of such conversation between the witness and deceased. The declarations of the deceased were not part of the *res gestae,* be-

cause they related to a transaction that occurred a week be-
fore, and that was a past and accomplished transaction. They
were not admissible as a dying declaration because the neces-
sary predicate for the admission of such declaration had
not been made. They were not admissible on the ground
of being declarations of a co-conspirator, because made sub-
sequently to the consummation of the object of the con-
spiracy, if any, and not pending such conspiracy and in
furtherance thereof. The evidence sought by the question
and elicited thereby was hearsay, and should have been ex-
cluded. *Howard v. People,* 185 Ill. 552, 57 N. E. Rep. 441;
*People v. Davis,* 56 N. Y. 95; *Commonwealth v. Felch,* 132
Mass. 22; *People v. Aiken,* 66 Mich. 460, 33 N. W. Rep.
821; *State v. Clements,* 15 Oregon 237, 14 Pac. Rep. 410;
*People v. Murphy,* 101 N. Y. 126, 4 N. E. Rep. 326; *Jen-
kins v. State,* 35 Fla. 737, 18 South. Rep. 182. The testi-
mony was highly material and tended strongly towards
fastening upon the defendant the responsibility for the
alleged miscarriage of the deceased. She asserted in the
challenged conversation that she had been at defendant's
house for two weeks; that she had come there to be treated
by him, and that a week after her arrival there had had a
miscarriage, all of which tended strongly to fix upon him
the procurement of the alleged miscarriage. Its admission
was material error and necessitates a reversal of the judg-
ment.

The same witness was permitted over the defendant's
objection to state that his diagnosis of the case at the time
was that the deceased was suffering from septic pois-
oning, and that such septic poisoning was produced either
by the decaying portions of the *placenta* or after-birth left
in the uterus, or from poison introduced by dirty hands or
dirty instruments. The question eliciting this answer was
objected to on the ground that such diagnosis was not
formed wholly from the witness' examination, but partly
from what deceased had told witness. This objection was

overruled and such ruling is assigned as the nineteenth error. The defendant then moved the court to strike out the said answers of the witness, which motion was denied and exception noted, and such ruling forms the basis for the twentieth and twenty-first assignments of error. There was no error here. The witness showed by the detailed statement of the examination that he made of the deceased and of what he found on such examination that his diagnosis of her case was based upon such observations, and not upon what she may have told him. As to his statement to the effect that the condition of septic poisoning had been produced either by the presence of a decaying portion of the *placenta* that he found, or by the introduction of poison from unclean hands or instruments, it was but the expression of his opinion as a medical expert.

The same witness, after having testified that the defendant in his presence prepared a telegram to be sent to the parents of the deceased, was asked the question: *Q.* How did he first sign that telegram? Which question was objected to by the defendant as being immaterial and irrelevant. The witness answered that he thought he just put his initials to the telegram or his first name, and I told him to sign his full name. Then the witness was asked the question: *Q.* And did he sign his full name at your request only? Which question was objected to as being immaterial and irrelevant, and because it seeks the opinion of the witness. These objections were overruled and such ruling constitutes the twenty-second assignment of error. We fail to see the materiality of this evidence either *pro* or *con.* It had nothing in it of benefit to the prosecution, nor of harm to the defense, and its admission was, therefore, harmless error.

The twenty-third assignment of error is expressly abandoned here.

The same witness was asked on re-direct examination if he was there in consultation with Dr. Weightnovel as a

brother physician.   Which question was objected to by the
defendant as being irrelevant and immaterial, and was an ,
indirect attack upon the character of the accused, which had
not been put in issue.   The objection was overruled, ex-
ception taken, and the witness answered, "No, sir."   The
defendant then moved to strike the answer on the same
grounds of objection urged to the question, and on the
further ground that is was not in re-direct of anything
brought out on cross-examination.   Which motion was
overruled by the court, and these two rulings constitute the
twenty-fourth assignment of error.   While we do not
now adjudge this ruling to be reversible error, yet on an-
other trial the question and answer should be rejected, as
it throws no possible light upon the issues under investiga-
tion and tends to some extent to reflect upon the character
of the accused as not being a person with whom reputable
physicians would consult professionally.

The twenty-fifth, twenty-sixth and twenty-seventh as-
signments of error all question the propriety of the ad-
mission of certain parts of the evidence of Dr. J. M. Gran-
tham, a witness for the State, who testified to having taken
part in the *post mortem* examination of the deceased, and
who detailed the conditions of the body after death, and
gave his opinion as a medical expert as to the causes of the
conditions as he found them.   A detailed statement of all
of this testimony objected to can subserve no useful pur-
pose here, but it is sufficient to say that the court committed
no error in the rulings complained of in reference thereto.

J. Carl Christian, a witness for the State, after hav-
ing testified that he was a cousin of the deceased, and that
he had engaged a room for her at the defendant's and had
taken her there on her arrival in Tampa, and that he had
made repeated visits to her while there, and that he had
visited her there about two days after her arrival there, was
asked the question:   *Q.*   Did you have any conversation
with her in reference to her remaining at that place, and

did she request you to do anything so that she could remain there? This question was objected to by the defendant on the same grounds of objections urged to similar questions to the witness Dr. Abernethy, but the objection was overruled and exception taken. The witness answered: *A.* She told me to telegraph to Waycross, Ga., for her trunk. Then the further question was asked: *Q.* What else? To which the witness answered: *A.* Why, she told me she was going to remain at Dr. Weightnovel's place to be treated and to have her child removed from her, and told me to telegraph to Waycross, Ga., for her trunk.

The admission of this evidence constitutes the twenty-eighth assignment of error. There was no error in the admission of this evidence. It was part of the *res gestae.* It was not admissible to prove the substantive fact that the defendant committed the crime, but for the purpose of showing willingness on the part of deceased to have the operation performed and the existence of an opportunity for defendant to perform it. *State v. Howard,* 32 Vt. 380; *State v. Dickinson,* 41 Wis. 299.

The same witness, after stating that he visited the deceased at defendant's house on Wednesday, about a week before her death, when he found her in bed for the first time since she had been there, was asked the question: *Q.* Did you have any conversation with her there in the room on that day? And answered, Yes, sir. Then he was asked if the defendant was present during such conversation and answered that he was not in the room, but was just outside the room in a hammock, about ten or fifteen feet away, and that the deceased talked to him in her natural tone of voice, like she always talked to him, and that the door of the room was open, and that it seemed to him that the defendant could have heard such conversation from where he was, but that he did not know how his hearing was. The defendant's counsel objected to the witness being allowed to state what the deceased said to him on this

occasion, because it had not been shown to have been said in the presence of the defendant, but the objection was overruled and exception taken, and such ruling constitutes the twenty-ninth assignment of error.   The witness then answered:   My cousin told me that the operation had been performed the night before by the doctor, and that the thing had been removed, and that the doctor told her on the following Tuesday that she would be able to go home.   This evidence was erroneously admitted.  If the conversation was not had in the presence or hearing of the defendant it was hearsay, and to render it admissible as having been made in defendant's hearing the burden was upon the State to show clearly that it occurred in the hearing of defendant, and this fact was a preliminary one for the court, and not for the jury, to decide, before admitting the conversation in evidence, and we do not think that it was clearly or satis-factorily shown to have occurred in his hearing, particu-larly so in view of the fact that he was shown to have been a foreigner with but a very imperfect knowledge or under-standing of the English language, in which the questioned conversation was conducted.

One Frank Middaugh, a witness for the State, was permitted over the objection of the defendant to testify to having heard from the house of the defendant on the night that the deceased died the distressed cries of a girl calling, "Doctor, doctor," and that he saw the defendant at the time sitting in the open window of a lighted room in his house fanning himself.   The ruling admitting this evidence is the thirtieth assignment of error.

In view of the fact that at the time of this occurrence it is admitted that the abortion, if any, had been accom-plished for at least a week past, and that another physician had been called in attendance on the deceased, we fail to discover the pertinency or materiality of this evidence, and without deciding its admission to be reversible error, will suggest that it be excluded on another trial, as it tends only

to inflame the minds of the jury in the case against the defendant by recounting the sufferings of the deceased just prior to her death.

The thirty-first assignment of error is abandoned here.

One Reed, who was the undertaker that removed the body of the deceased from the house of the defendant, was permitted over the defendant's objection to testify that when he went there to see about removing the body the defendant expressed the wish to him that he would get the body out as quietly as possible and that he would not bring his big apparatus, meaning my big dead wagon, which was rather a showy looking wagon, and that he gave as a reason that her people did not want it to get out that she had died there. The admission of this evidence is assigned as the thirty-second error.

There was no error here. The evidence tended to show a disposition on the part of the defendant to conceal the unfortunate occurrence at his house, and thereby to estop public inquiry, and for this reason the evidence was not improperly admitted.

And so, too, with the thirty-third assignment of error, which complains of the admission in evidence of the testimony of one Carter, a witness for the State, to the effect that he was the officer who arrested the defendant, and that when he arrested him the defendant walked through his house and picked up from a back portico some soiled clothing of a female and rolled it up in a bundle and started to throw it under a table, but the witness, noticing it to be stained, took the bundle away from him, and such stained clothing was also admitted in evidence. The testimony tended to show a disposition on the part of the defendant to conceal evidences of the crime, and for that reason there was no error in admitting it.

In answer to direct interrogatory No. 7 propounded by the defendant to one Oscar Patterson as a witness on his behalf, the said witness, after testifying that he was pres-

ent in defendant's house when the deceased first came there, stated that he then heard her say while sitting at a table that "she had taken medicine and was fixed." This part of the witness' answer was suppressed and not allowed in evidence on objection by the State, and this ruling constitutes the thirty-fourth assignment of error.

There was no error here. The alleged declaration of the deceased made in the hearing of the witness by its very terms related to a past transaction, and was no part of the *res gestae* and was properly excluded as being hearsay.

The same remarks apply equally as well to the exclusion of the answer of the same witness to the eighth interrogatory that is assigned as the thirty-fifth error. There was no error in its exclusion.

Upon the close of the evidence in the case the defendant's counsel moved the court to instruct the jury to find a verdict of acquittal of the defendant on the second count of the information, which motion was denied and such ruling is assigned as the thirty-sixth error.

There was no error here. Even if the defendant had a right to demand such instruction, no harm was done him in its refusal, for the reason that the jury did acquit him of the charge laid in such second count.

The defendant then moved that the court require the State to elect upon which count it would rely for a conviction. This motion was also denied, and such ruling is assigned as the thirty-seventh error. There was no error here. Both counts of the information alleged the same crime, but by different means. The State had a right to rely upon either or both counts, and there was no impropriety in refusing to make such election.

The thirty-eighth assignment of error complains of a slight modification of the fifteenth instruction requested by the defendant before giving same to the jury. It will subserve no useful purpose to set out this charge in *extenso* or to give the modification complained of. It is sufficient for

us to say that there was no error in the addenda of the court thereto.

The thirty-ninth assignment of error complains of the failure of the judge to sign and seal the instructions given at the request of the defendant. Since the adoption of our Revised Statutes in 1892 the formality of sealing charges by the trial judge is no longer necessary. *Denmark v. State,* 43 Fla. 182, 31 South. Rep. 269. The trial judge should, in compliance with the statute, *officially* sign the charges in such cases, but his failure to do so, in order to avail a party before an appellate court, must be duly excepted to before verdict, otherwise it will be held to have been waived. *Morrison v. State,* 42 Fla. 149, 28 South. Rep. 97. There was no complaint against the failure of the judge to officially sign the instructions given until after verdict in the motion for new trial, and such irregularity must, therefore, be held to have been waived.

The fortieth assignment of error complains of the failure of the judge to number and distinguish the different instructions given in the court's general charge. While, for the sake of convenience and ready designation, it is the custom and better practice for trial judges to *number* the separate instructions that they give upon different propositions of law, yet we know of no rule of law that would make his failure to do so available to a party on a writ of error. But even if it was so available, the defendant has waived it in this case by failing to except to, or to complain of, it until after verdict.

The forty-first assignment of error complains of the first paragraph of the court's general charge to the jury. Without adjudging the feature of the charge complained of to be erroneous, we will say that the words "or have an abortion," wherever they occur in such charge, should be omitted from such charge on another trial, as the information nowhere alleges an intent to effect an *abortion,* but

simply a miscarriage, there being well defined differences between the two.

The forty-second assignment of error complains of the fourth, sixth and seventh paragraphs of the court's general charge. The complaint urged against these instructions is that they define the different degrees of murder and justifiable and excusable homicide, which had nothing to do with this case, as the defendant was charged only with manslaughter. There is no merit in this contention. As was stated by the court in his charge, after giving the statutory definition of manslaughter, it was necessary for the jury to know the definitions of murder in its various degrees, and of justifiable and excusable homicide, in order rightly to understand the statutory definition of manslaughter.

The forty-third, forty-fourth and forty-fifth assignments of error complain of divers instructions by the court to the jury. Without setting them out in detail, we will say that we have examined the said various instructions and discover no error in their statement of the law.

The forty-sixth assignment of error complains of the omission of the judge to sign his name *officially* to the charges given by the court. This assignment is fully disposed of above.

The forty-seventh and last assignment complains of the court permitting the jury to take the information with them to their room. The only evidence in the record of the existence of the fact alleged in this assignment is a recital of such fact in one of the grounds of the motion for new trial. Under the well-settled rule here this furnishes no evidence to an appellate court that the recited fact was true, and such court cannot, therefore, consider it. *Thomas v. State ex rel. Roberts,* 37 Fla. 378, 20 South. Rep. 529; *Bryant v. State,* 34 Fla. 291, 16 South. Rep. 177; *Thalheim v. State,* 38 Fla. 169, 20 South. Rep. 938.

For the errors found the judgment of the court be-

low is reversed and a new trial awarded at the cost of the county of Hillsborough.

Since the judgment is reversed it would be improper for us to express any opinion upon the sufficiency of the evidence to support the verdict, the question presented by the tenth and twelfth assignments of error.

HOCKER and SHACKLEFORD, JJ., concur.

CARTER, P. J.; MAXWELL and COCKRELL, JJ., concur in the opinion.