[Crim. No. 1783. In Bank.—January 9, 1914.]

## THE PEOPLE, Respondent, v. ALVIN H. WRIGHT, Appellant.

CRIMINAL LAW—MURDER—ABORTION—CORPUS DELICTI—EVIDENCE.—In a prosecution for murder in causing the death of a woman by means of a criminal abortion, the evidence is held sufficient to establish the *corpus delicti*,—namely, that the woman was dead, and that her death had been occasioned by unlawful means, and also sufficient to sustain the verdict against the defendant, in that it established that the unlawful means were chargeable against him.

ID.—MURDER AS RESULT OF ABORTION—ABSENCE OF ELEMENTS OF MAN-SLAUGHTER—INSTRUCTIONS.—In abortion cases, where the defendant rests simply upon a denial of the crime charged, no element of manslaughter enters into the case, and the court's *instructions are properly limited to a charge upon murder in* the second degree. Where, however, the evidence discloses a reasonable ground to believe that the defendant might not have been guilty of murder, but might have been guilty of involuntary manslaughter, the definition and explanation of this kind of manslaughter should be included in the charge.

ID.—INVOLUNTARY MANSLAUGHTER—FAILURE TO INSTRUCT CONCERNING—DEFENSE RESTED UPON CONFLICTING THEORY.—Notwithstanding the existence of evidence, which, if believed by the jury, would have justified a verdict of involuntary manslaughter, the failure of the court to instruct upon that subject is without prejudice to the defendant, if other instructions proposed by him disclosed the deliberate purpose to rest his defense upon the proposition that he had committed murder in *the second degree or was innocent of any crime.*

ID.—DECLARATIONS OF WOMAN AS TO CONDITION OF PREGNANCY—PURPOSE OF VISIT TO DEFENDANT.—In such a prosecution, declarations of the woman as to her condition of pregnancy and the purpose of her

visit to the defendant are inadmissible as direct proof of the com-
mission of the abortion, but are admissible as evidence establishing
her condition and the avowed purpose of her visit.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order refus-
ing a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

George B. Keane, and A. S. Newburgh, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan,
Deputy Attorney-General, for Respondent.

HENSHAW, J.—Defendant was charged with murder in
causing the death of Hattie F. Brown by means of a crim-
inal abortion performed by him upon the body of Hattie F.
Brown, from which operation her death resulted. He was
convicted of murder in the second degree and from the judg-
ment of conviction and from the order denying his motion for
a new trial he appeals.

The first contention upon the appeal is that the *corpus de-
licti* was not proven. The state established that the deceased,
a married woman living with her husband, was with child.
She was unwilling to bear this child and so told her sister-in-
law, an intimate friend. She informed her sister-in-law that
she was pregnant, that she did not want any more children
and that she was going to a doctor to have him get rid of the
child she was then carrying; that her pregnancy had ad-
vanced from six weeks to two months. The sister-in-law tes-
tified that she accompanied her to the office of defendant, a
practicing physician, remained in the ante-room while Mrs.
Brown went into the private office of the physician, where she
was absent about ten minutes. Leaving the doctor's office
together, the deceased informed the witness that she was to
return to the doctor the next day. She did so, this time going
alone. Upon the day after this second visit she complained
of severe pains in the abdomen. The defendant was sum-
moned and came to the house. Defendant cleansed the vagina
and uterus, taking therefrom many large clots of blood, and
"a round ball; I don't know what that was. Whatever it was
it was white and hard." The defendant then told the sick

woman that "she must have been further along than she thought she was. He said she was at least three months in the family way." Thereafter the defendant continued to call upon and treat his patient, visiting her several times a day. Finally, upon July 3d, the sick woman's condition growing steadily worse, the family called in another physician, under whose directions she was taken immediately to a hospital where shortly thereafter she died. Other circumstances were shown, such as the defendant's objection during the time of the woman's illness to the calling in of another physician, saying that such a physician "would cut his throat." Another was the defendant's observing an automobile in front of the house when he was about to make a visit, and saying that he hesitated to go in "because he thought they had called in another doctor on him but he said he had the nerve enough to come into the house." The immediate cause of the death was malignant endocarditis. The dead woman's womb had been infected and had been curetted. The testimony is that a direct infection followed the curettement and that endocarditis was a secondary infection following that of the womb, resulting directly from it and causing the woman's death. This evidence, assuming for the moment that it was all permissible evidence, was certainly sufficient to establish the *corpus delicti,*—namely, that the woman was dead and that her death had been occasioned by unlawful means. It was also sufficient to sustain the verdict against this defendant, in that it established that the unlawful means were chargeable against him.

True, there was evidence for the defense, making wholly against the contention of an illegal operation, but the weight of that evidence was for the jury, and it may not judicially be said that it did more than to raise a conflict over the question of the defendant's guilt. That evidence, in brief, was this: The defendant testified that the deceased came to his office for treatment, complaining of pains, and an examination disclosed an enlarged uterus, not necessarily an indication of pregnancy, but quite common in the case of women who have borne children, as this woman had. She was suffering from endometritis, an inflammation of the endometrium or lining membrane of the womb, producing a profuse and disagreeable discharge. He thoroughly irrigated the uterus and filled the

cavity with a solution of twenty per cent argeryol, an unobjectionable treatment for her disease. She came the next day under his directions, when he again cleansed the uterus with an aseptic solution. He found no evidence of pregnancy and was informed of none. Called to the woman's house the next day, he discovered a profuse hemorrhage which he treated by accepted methods. He removed many large clots of blood, but did not observe the "hard round substance," about the size of "one's fist," concerning which the deceased woman's sister-in-law had testified. He attributed the hemorrhage to the diseased condition of the uterus. He did not remember to have made the statement to the sister-in-law concerning the advanced state of pregnancy of the deceased, and his recollection was that he did not make it. Further, it was shown that endocarditis follows many diseases, and may result from any one of a large number of infections. The post mortem disclosed that the deceased was suffering from nephritis of the kidneys, and endocarditis sometimes, though very rarely, follows from such nephritis.

This epitome of the evidence for the defense is thus given, both to show that it did no more than to raise a conflict which it was the special province of the jury to pass upon, and also for the exposition of the next proposition which appellant advances, which is that the court erred in refusing to give to the jury certain proposed instructions upon the subject of manslaughter. As there seems to be some misconception of the duty of the court in this regard in cases such as this, and indeed in all criminal cases, a few words by way of preliminary statement may not be amiss. It is not the "theory" which the prosecution advances, nor the "theory" which the defense adopts, which governs the court in the giving or in the refusing to give instructions. Theories are of moment in a criminal case only as they are supported by substantial evidence. What the trial court is commanded by law to do is to state to the jury all matters of law necessary for their information in their deliberations. (Pen. Code, sec. 1127.) Section 1159 of the Penal Code declares that "The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged." Let us by simple illustration discern exactly what this section means. A defendant is charged with murder and

the evidence of the prosecution goes wholly to show that he committed the crime by lying in wait. The sole defense is an alibi. Under such a state of the record, there being no word of evidence tending to prove a lesser crime than the one charged, the court would properly limit its instructions to the crime of murder in the first degree alone. But this, not because of any "theory" of prosecution or defense, but because the commission of that one crime and that one crime alone is all that the evidence tends to establish. But, upon the other hand, let us assume that the defendant offers evidence to show that he was not lying in wait for the deceased, that the encounter was a chance encounter, that the deceased was the assailant, and that he killed him in the heat of passion and under great provocation. This defense, if sufficiently established and believed by the jury, would present a case of excusable homicide (Pen. Code, sec. 195, subd. 2), or of voluntary manslaughter (Pen. Code, sec. 192, subd. 1). It would then become the manifest duty of the court to instruct not only upon the subject of murder in the first degree, but upon the subject of voluntary manslaughter and excusable homicide. But this, again let it be said, not because of the mere "theories" of prosecution or defense, but because evidence of substantial weight had been introduced tending to establish that a lesser and not a greater offense had been committed. The same simple, legal proposition exists in every criminal charge which in itself contains the elements of a lesser offense. Under our law, where death results from the performance of an unlawful abortion, the crime is murder in the second degree. (Pen. Code, sec. 189.) So if a defendant thus charged rests simply upon a denial of the offense, and no evidence of a lesser offense is before the court and jury, the instructions should go simply to murder in the second degree, and the verdict should be either guilty as charged or not guilty. But it is open to the defense to offer evidence, as was here offered, to the effect that the defendant did give to the woman legitimate accepted treatment for a disease of the womb, with which she was plainly suffering; that he did not know she was pregnant; had no reason to believe that she was pregnant and every reason to believe that she was not. If this should be established to the satisfaction of the jury, or to the extent of raising a reasonable doubt in their minds,

with a showing that the defendant used due caution and circumspection in his inquiries and in his treatment, he could justly be convicted of no crime. Or if the evidence fell short of that, but satisfied the jury that the death of the woman resulted from the commission by the defendant "of a lawful act performed in an unlawful manner or without due caution and circumspection," the defendant could properly be convicted only of involuntary manslaughter. (Pen. Code, sec. 192, subd. 2.) So, to repeat, in abortion cases, where the defendant rests simply upon a denial of the crime charged, no element of manslaughter enters into the case, and the court's instructions are properly limited to a charge upon murder in the second degree. Where, however, the evidence discloses a reasonable ground to believe that the defendant might not have been guilty of murder, but might have been guilty of manslaughter, the definition and explanation of this kind of manslaughter should be included in the charge. It is in this sense, and in this sense alone, that *People* v. *Huntington,* 138 Cal. 261, [70 Pac. 284], and *People* v. *Huntington,* 8 Cal. App. 612, [97 Pac. 760], are to be read and understood.

The outline of the testimony for the defense above given sufficiently indicates that there was evidence before the jury which, if believed by them, would have justified a verdict of involuntary manslaughter. Certain instructions touching the crime of manslaughter were proposed by the defendant and were not given by the court. Upon this ruling error and injury to the defendant are predicated. The defense proposed numerous instructions. Amongst the first to come under the eye of the trial court was the following:

"The defendant in this case is charged with the crime of murder. I charge you that there are two things which are necessary to be proven in this case before you can convict the defendant, and each of them must be proved to a moral certainty and beyond a reasonable doubt. These are: 1. That the crime of murder has been committed; and 2. That such crime was committed by this defendant, and by no other person; and if, from the evidence, you are not satisfied to a moral certainty and beyond a reasonable doubt that the deceased was murdered, or if you are satisfied that she was murdered, but are not satisfied to a moral certainty and beyond a reasonable doubt that the defendant committed the crime charged,

then I instruct you that it is your duty to find the defendant
not guilty.''

Other instructions were to the same tenor and effect.   They
disclose the deliberate attitude of the defense to rest its case
upon the proposition that defendant had committed murder
in the second degree or was innocent of any crime.   The court
was justified in giving these instructions.   Later, the defense
proposed certain instructions to this effect: that the charge
of murder includes manslaughter, and manslaughter is the
unlawful killing of a human being without malice; if the jury
entertain a reasonable doubt that the defendant acted with
malice, then the jury cannot find the defendant guilty of mur-
der, but the defendant might still be guilty of manslaughter;
before the jury can find the defendant guilty of manslaughter
they must find to a moral certainty that he did unlawfully
kill the deceased, though acting without malice; and if the
jury entertain any reasonable doubt as to manslaughter the
defendant cannot be convicted of that offense.   Two things
are here to be noted.   First, that the instructions upon the
subject of manslaughter are general, vague, and by no means
addressed to the one and only form of manslaughter concern-
ing which evidence was given, that is the commission of a
lawful act which might produce death in an unlawful manner,
or without due caution and circumspection.   In other words,
if the defendant was guilty of manslaughter it was because
he was performing his medical and surgical acts without due
inquiry as to the woman's condition, or was performing them
after such due inquiry without proper caution and circum-
spection.   Nothing of this is stated in these general instruc-
tions.   But more important still, the defendant had asked of
the court to give instructions eliminating from the case every
element of manslaughter and sending him to the jury upon
the single issue of guilty of murder in the second degree or
not guilty.   This position the defendant had the right to take,
but after having taken it and secured from the court instruc-
tions to that effect, his right to complain of the court's re-
fusal to give instructions touching manslaughter was lost and
gone.   So that while it may be said that the case was one in
which instructions upon the subject of manslaughter might
properly have been given, the court's refusal under the cir-
cumstances was justifiable.   If there was error at all, it was

error invited by the defendant in proposing wholly conflicting and inconsistent instructions.

Complaint is made of the introduction in evidence of the declarations of the woman as to her condition of pregnancy and the purpose of her visit to the doctor. Such declarations are hearsay. They are not admitted, and it would be improper to admit them, as direct proof of the commission of the abortion. They were not so admitted. They were properly admitted as evidence establishing the condition of the woman and the avowed purpose of her visit. (*State* v. *Dickinson,* 41 Wis. 299; *State* v. *Alcorn,* 7 Idaho, 599, [97 Am. St. Rep. 252, 64 Pac. 1014]; *State* v. *Power,* 24 Wash. 34, [63 L. R. A. 902, 63 Pac. 1112]; *State* v. *Glass,* 5 Or. 73; *State* v. *Gedicke,* 43 N. J. L. 86; *Weightnovel* v. *State,* 46 Fla. 1, [35 South. 856]; *Solander* v. *People,* 2 Colo. 48; *Commonwealth* v. *Snow,* 116 Mass. 47; *State* v. *Howard,* 32 Vt. 380.)

The judgment and order appealed from are therefore affirmed.

Shaw, J., Angellotti, J., Sloss, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.