[Crim. No. 484.   First Appellate District.—May 14, 1914.]

## THE PEOPLE, Respondent, v. HENRY QUAN CHUCK, Appellant.

CRIMINAL LAW—HOMICIDE—REFUSAL OF INSTRUCTION ON MANSLAUGHTER —WHEN PROPER.—Where there is no evidence in a homicide case on which to predicate an instruction on manslaughter, except a brief interchange of words between the accused and the deceased, just before the firing of the fatal shots, which does not disclose a quarrel or show any incitement by the deceased to any such heat of passion on the part of the defendant as would serve to justify a jury in reducing the crime from murder to manslaughter, the court properly refuses .an instruction on the subject of manslaughter.

ID.—DECLARATIONS OF ACCUSED AS TO FEAR OF WITNESSES—WHEN INADMISSIBLE AS SELF-SERVING.—Statements made by the accused to police officers prior to the homicide, as to his being afraid of the witnesses for the prosecution, are properly excluded as self-serving.

ID.—DEFENSES IN HOMICIDE CASE—ALIBI AND CONSPIRACY TO CONVICT— REVIEW ON APPEAL.—Where in the prosecution of a Chinaman for homicide the defense relies upon an *alibi* and upon a conspiracy by Chinese witnesses for the people to convict the defendant of the crime when they themselves committed it, and the jury disbelieve the defendant's evidence produced in support of such defenses and bring in a verdict of guilty of murder in the first degree, an appellate court cannot go behind the direct evidence fastening the crime on the defendant to discover the alleged conspiracy and disturb the verdict.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

H. H. Davis, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from a judgment upon a verdict of conviction of the defendant of murder in the first degree, with his punishment fixed at life imprisonment, and from an order denying his motion for a new trial.

The facts as presented by the chief witnesses for the prosecution were briefly these: Four Chinese persons were in the basement of a Chinese store on Jackson Street in San Francisco, upon the twentieth day of June, 1913, about 10 o'clock in the evening, when the defendant entered and asked for Fong Hung, the deceased. He was told that he was not in, but one of those present offered to telephone for him, which he did, and Fong Hung presently appeared; and defendant asked him for a loan of twenty-five dollars, to which the deceased replied that. ''he had no money.'' The defendant then asked ''What are you going to do about it?'' to which the deceased answered ''What are you going to do about it?'' and started to walk away. The defendant drew a pistol and fired several shots at the deceased, killing him almost instantly. He then threw away the weapon and fled up the street to another building. The officers who appeared presently on the scene, attracted by police whistles blown by the Chinese witnesses to the murder, went into this building, and at first arrested another Chinese who was acting suspiciously, and brought him to the spot of the crime, where the witnesses declined to identify him, but informed the officer that the defendant was the person who had done the shooting. They went back immediately and found the defendant in the building which the murderer had been seen to enter, and apprehended him. When brought to the scene of the homicide the four witnesses identified him as the

murderer; and, when called as witnesses in the case, all tes-
tified positively that they had seen him do the deed. The
defense relied chiefly upon an *alibi,* which was not, however,
established to the satisfaction of the jury, who returned a
verdict of murder in the first degree.

The first point made by the defendant upon this appeal is
that the court erred in its refusal to give an instruction upon
the subject of manslaughter. This contention of the defend-
ant must be based, under the authorities, upon the claim that
there is sufficient evidence in the case upon which the jury
might predicate a verdict of manslaughter. The only bit
of evidence which the defendant can find to base this claim
upon is that contained in the brief interchange of words
between the defendant and the deceased just before the
homicide. The bare words of that conversation do not
suffice to disclose or suggest a quarrel; nor to show any in-
citement by the deceased to any such heat of passion on the
part of the defendant as would serve to justify a jury in
reducing the defendant's crime from murder to man-
slaughter; and that the jury who heard the evidence of this
conversation did not so regard it is plain, for they refused
by their verdict to reduce the defendant's crime even to
murder in the second degree, although they were instructed
that they might do so. We must conclude therefore, that
this episode immediately preceding the homicide was not of
sufficient importance to have entitled the defendant to have
an instruction upon the subject of manslaughter given, or
to have the judgment reversed because the court, having
also heard all the evidence, refused to so instruct the jury.
The case of *People* v. *Wright,* 167 Cal. 1, [138 Pac. 349],
cited by the appellant, is in entire harmony with these views.

The appellant further contends that the court erred in
sustaining the objection of the prosecution to a number of
questions put to witnesses for the evident purpose of show-
ing that a relation of enmity existed on the part of the four
main witnesses for the people toward the defendant; and
that he stood in respect to them in an attitude of fear, for
example, Officer Sutton, called for the people, was asked on
cross-examination this question: "Did Quan Chuck ever
complain to you of being afraid of his life?" to which an
objection was sustained—and very properly so; for a state-

ment of this kind made by the defendant some time before the homicide would be evidently a self-serving declaration, and as such inadmissible upon any possible theory of the case. In short, all of the testimony sought to be elicited from the police officers regarding the defendant's fear of his accusers, and his various acts indicative of such fear, were either, hearsay or conclusions not properly admissible in evidence.

The same observation applies to the testimony of the defendant himself. His conclusions as to the reasons for the enmity of his accusers were properly stricken out; but his direct testimony as to their acts of hostility was in each case admitted and allowed to remain in evidence.

The defendant predicates his effort to procure the admission of much of this sort of proof upon his theory of the case, which is that he was not the perpetrator of, and was not present at the time and place of the crime; but that the four witnesses against him were enemies both of the deceased and of himself; that ·it was they who killed the deceased; and being the only witnesses to their own crime, conceived and attempted to execute the double crime of swearing it off upon him. Counsel for the defendant argues plausibly that since all of the parties and eye-witnesses to this homicide are Chinese, and most of them of the highbinder type, this court ought to go behind the direct evidence fastening the crime upon the defendant, to discover and declare the existence of the dark conspiracy above set forth. However plausible this argument may be, the only available place for its presentation was to the jury in the trial court. Before this court of appeal all parties, all nationalities and all proofs must be placed upon the same footing, and be estimated by the same inflexible rules of law. In the case at bar four Chinese witnesses testified that they saw this defendant commit this crime. The defendant on his part produced his proof in support of his *alibi,* and also in support of his theory that the witnesses against him were seeking the life of both the deceased and himself, because of the fact that he had been an informer against them in relation to other offenses against the law. The jury believed the eye-witnesses to the crime and disbelieved the defendant's *alibi.* Upon such a state of the record it is plain that

had the parties and witnesses been of European extraction the verdict of the jury would not be disturbed; and the same rule must be applied to a case where all of the parties and witnesses are of Asiatic extraction; for otherwise our judicial system would cease to be the administrator of uniform and impartial law.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 12, 1914, and a petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on July 13, 1914.