[Crim. No. 2838. In Bank.—June 16, 1926.]

THE PEOPLE, Respondent, v. TILLIE SCHAFER, Appellant.

[1] CRIMINAL LAW—ABORTION—CORPUS DELICTI—SUFFICIENCY OF EVIDENCE.—In this prosecution for murder, based upon an alleged abortion, it is held that the evidence was sufficient to sustain the verdict of conviction of murder in the second degree.

[2] ID.—WEIGHT OF EVIDENCE—APPEAL.—In a criminal case it is the function of the jury in the first instance to determine what facts are established, and before a verdict which has been accepted by the trial court and subsequently approved on motion for a new trial can be set aside on appeal upon the ground of insufficiency of evidence, it must be made to appear that upon no hypothesis is there sufficient substantial evidence to support the conclusion reached in the court below.

---

1. See 13 Cal. Jur. 605; 1 R. C. L. 79; 13 R. C. L. 849.
2. See 8 Cal. Jur. 585; 2 R. C. L. 193.

[3] ID.—INSTRUCTIONS—PROPER REFUSAL.—In such a case, there was no error in refusing instructions proposed by the defendant which were based upon a certain assumption, where the evidence warranted the jury in believing another assumption, and the substance of the instruction was covered by other portions of the charge.

(1) 20 C. J., p. 314, n. 54.   (2) 17 C. J., p. 271, n. 41.   (3) 16 C. J., p. 949, n. 96.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Harold Louderback, Judge. Affirmed.

The facts are stated in the opinion of the court.

Nathan C. Coghlan for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

WASTE, C. J.—Appellant was charged with the crime of murder. It was the claim of the prosecution at the trial that the decedent, a woman about thirty-one years of age, died as the result of a miscarriage produced by criminal means forbidden by section 274 of the Penal Code, and that the unlawful means were chargeable against appellant. From the judgment of conviction of murder in the second degree, and from the order denying a motion for a new trial, this appeal is taken.

Some time in the early part of 1924 the decedent, being in serious trouble, consulted the appellant, who refused to assist her. On the night of April 23, following, the decedent again went to the home of appellant, remaining all night. Police officers called to the house the next morning found the decedent lying on a couch dead. The autopsy surgeon testified that he examined the body at the city morgue. He found that death had been caused by hemorrhage of the uterine cavity as the result of an abortion which had been performed within a few hours before the death of the woman, and in his opinion she had been dead but two or three hours at the time he made the examination. He testified that while he could not state by what means the abortion was actually caused, the entire foetus had been re-

moved; there was no clotting of blood; the tissues were
freshly bleeding; and only a bit of the membrane of preg-
nancy was left.    Prior to death there had been a considerable
amount of blood lost which left the body pallid.    This evidence
was sufficient to establish the *corpus delicti,* viz., that the
woman was dead and that her death had been caused by
unlawful means.    (*People* v. *Wright,* 167 Cal. 1, 3 [138 Pac.
349].)    It is contended that the evidence was not sufficient
to sustain the verdict for the reason, it is claimed, that it
does not establish that the unlawful means which occasioned
the decedent's death were chargeable against appellant.

The police officers who were called to the house on the
morning of decedent's death described the condition of the
body when found, and told of the blood on the decedent's cloth-
ing and on the couch on which she lay.    They testified that
the kitchen of the flat had "been lately scrubbed up and it
was still wet," and in the stove were what appeared to be
ashes of rolled cloth, which had been recently burned.    On
being taken to the police station to be interrogated concern-
ing the death of the decedent appellant signed two written
statements.    In them she stated that she did not perform
an operation upon the decedent and that she did not know
who did.    In the first statement the appellant related that
the decedent came to her house some time before her death,
seeking her help, and "said that she understood that I would
perform an abortion on her, but I told her I was not doing
that any more since I got in trouble."    In the other state-
ment the appellant told how the decedent came to her home
the night before her death and she (appellant) gave the
decedent a douche "composed of a solution made out of
Indian weed boiled up in a tea and a little camphor added.
This tea was given for the purpose of bringing her around."
Appellant and decedent slept that night in the same bed.
The decedent remained in bed until about 9 o'clock the next
morning, when she went to the bathroom, where she fell.
Appellant assisted her to a couch, and after endeavoring to
call a physician, notified the emergency hospital.    When the
ambulance arrived the woman was dead.    One of the police-
men testified that on the afternoon of April 24th the appel-
lant was taken to her home where "she produced a douche
bag with a nozzle on it which she said had been used in
performing the abortion."    There was also found, according

to this witness, some Indian weed used by the appellant in cooking the preparation to be used as a douche. There was more of the same kind of testimony, but the foregoing, in substance, is what the prosecution relies on to support the judgment of conviction. The appellant took the stand and denied certain statements made by the police officers, and gave an account of the occurrence differing somewhat from the signed statements.

[1] It is the contention of the appellant that the evidence fails to show that she had any hand in the commission of the abortion, which, it is claimed, caused the death of the decedent, but in view of all of the circumstances brought out by the testimony in the case we are of the opinion that there was sufficient evidence to support the finding of the jury. There was evidence that the decedent had consulted the appellant with regard to her condition. When the condition became more serious she again visited appellant. Apparently no one other than appellant saw the decedent from that time until the woman died. Prior to the visit decedent appeared to be in her usual health. Death was caused by hemorrhage following an unlawful practice. During the night, according to appellant, the decedent did not require any attention. Appellant and decedent were alone in the house after 7. o'clock in the morning. Appellant placed the time of the death around 9 o'clock. The autopsy physician testified that in his opinion the criminal operation had been performed within a period of two or three hours prior to the death. Appellant admitted that after decedent's death she burned bloody rags in the stove. From these, and the other facts established in the case, it seems only reasonable to conclude that a jury would be warranted in believing that the appellant not only performed the criminal operation, but destroyed the evidence of the crime. Other facts deducible from the record may tend to establish the innocence of appellant, but this court will not attempt to determine the weight of evidence. It is only called upon to decide whether, on the face of the record, it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. [2] It is the function of the jury in the first instance to determine what facts are established, and before a verdict which has been accepted by the trial court, and subsequently approved on motion for a new trial, can be set

aside on appeal upon the ground of insufficiency of the evidence, it must be made to appear that upon no hypothesis is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Erno,* 195 Cal. 272, 283 [232 Pac. 710] ; *People* v. *Tom Woo,* 181 Cal. 315, 326 [184 Pac. 389] ; *People* v. *Fitzgerald,* 138 Cal. 39, 41 [70 Pac. 1014].)

[3] Appellant's further contention is that the court erred in refusing to give three instructions proposed by her, which were based upon the assumption that the miscarriage was caused by the administration of the douche containing the solution of Indian weed. In view of the fact that the evidence warranted the jury in believing that the miscarriage may have been caused by means other than the administration of the douche, the instructions in the form in which they were proposed were properly refused. The substance of at least one of them appears to have been covered by other portions of the charge.

The judgment is affirmed .

Lawlor, J., Richards, J., Seawell, J., Shenk, J., and Curtis, J., concurred.

Rehearing denied.