El Pueblo de Puerto Rico, demandante y apelado, *v.* Laura E. Cirino, acusada y apelante.

Núm. 13490. *Sometido:* Enero 10, 1949. *Resuelto:* Enero 28, 1949.

<hr />

*César Andréu Ribas, Guillermo Pierluisi* y *Arcilio Alvarado,* abogados de la apelante; *Hon. Procurador General Vicente Géigel Polanco (José C. Aponte, Procurador General Interino,* en el alegato) y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El fiscal del Distrito de San Juan formuló contra Laura E. Cirino y Guadalupe Cirino dos acusaciones por el delito de asesinato en segundo grado. Ambas acusaciones fueron vistas conjuntamente ante el jurado y éste, luego de oír abundante prueba, rindió en cada caso veredicto condenatorio contra Laura E. Cirino y absolutorio en favor de Guadalupe Cirino. En armonía con los veredictos rendidos, la corte absolvió a Guadalupe Cirino y dictó sentencia contra Laura E. Cirino, condenando a ésta a sufrir una pena indeterminada de diez a veinte años de presidio en cada caso, debiendo las sentencias ser cumplidas concurrentemente. Laura E. Cirino ha apelado y en apoyo de su recurso señala los cinco errores que pasamos a discutir en seguida.

En primer lugar sostiene la acusada que "erraron la corte apelada y el jurado al declarar culpable a la acusada de delitos de asesinato en segundo grado bajo acusaciones que no exponían hechos suficientes para imputar dicho delito y que sólo imputaban o delitos de aborto o delitos de homicidio involuntario."

El delito de aborto está definido por el artículo 266 del Código Penal en la siguiente forma:

"Toda persona que proporcionare, facilitare, administrare o hiciere tomar a una mujer embarazada cualquier medicina, droga, o sustancia, o que utilizare o empleare cualquier instrumento u otro

medio, con intención de hacerla abortar, excepto el caso de que fuere necesario para salvar su vida, incurrirá en pena de presidio por un término de dos a cinco años.''

Si en el presente caso la prueba meramente hubiese demostrado que la acusada Laura E. Cirino proporcionó, facilitó, administró o hizo tomar a una mujer embarazada cualquier medicina, droga o sustancia, o que utilizó o empleó algún instrumento u otro medio, con intención de hacerla abortar, y que tal actuación de Laura E. Cirino no había sido necesaria para salvar la vida de esa mujer, y además que ésta no murió, el delito cometido hubiera sido desde luego el de aborto. Pero en este caso cada acusación específicamente alega que para el mes de septiembre de 1944, Laura E. Cirino, ''ilegal, voluntaria y criminalmente y con malicia, en ocasión de practicar un aborto criminal en la persona del ser humano Georgina López Bonano, mujer que se encontraba en estado de preñez, sin que tal aborto fuera necesario para salvar o preservar la vida de ésta, y sin que las acusadas fueran médicos cirujanos autorizados para ejercer tal profesión en Puerto Rico, introdujeron en los órganos genitales de la expresada Georgina López Bonano ciertos instrumentos y materias desconocidas para el fiscal que suscribe, ocasionándole a dicha Georgina López Bonano lesiones internas que produjeron una hemorragia vaginal, a consecuencia de la cual falleció la susodicha Georgina López Bonano pocas horas después.'' (La segunda acusación contra ambas acusadas está concebida en términos idénticos a la primera, a excepción de que en este caso la víctima lo fué Antonia Cabán Agrón.) La acusación en cada caso no se limita a imputar el delito de aborto, sino que va más allá y alega que como resultado del aborto criminal practicado en las indicadas mujeres éstas habían muerto.

Al discutir este error sostiene la defensa que dados los términos en que están redactadas las acusaciones las mismas no imputan un delito de asesinato en segundo grado, y que a

lo sumo imputan el delito de aborto o el de homicidio involuntario. No está en lo cierto. Asesinato, según el artículo 199 del Código Penal, es dar muerte ilegal, a un ser humano, con malicia y premeditación. Cuando el asesinato se perpetra por medio de veneno, acecho o tortura o la muerte ha sido alevosa, deliberada o premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, rapto, robo, asalto o mutilación, el mismo constituye asesinato en primer grado; siendo de segundo grado todos los demás. Artículo 201 del mismo cuerpo legal. Dadas las alegaciones que las acusaciones contienen el fiscal no hubiera podido imputar en ellas con éxito el delito de asesinato en primer grado. No obstante de la propia faz de las acusaciones se nota en seguida que el nervio de ellas ha sido imputar a la acusada Laura E. Cirino que con malicia dió muerte en cada caso a un ser humano. Las acusaciones claramente imputan un delito de asesinato en segundo grado. La contención de que el delito imputado es el de aborto o el de homicidio involuntario no encuentra apoyo en nuestra jurisprudencia ni en jurisprudencia interpretativa de disposiciones similares a las contenidas en los artículos 199 y 266 de nuestro Código Penal.

Los anteriores artículos equivalen a los artículos 187 y 274 del Código Penal de California. La jurisprudencia de dicho Estado con posterioridad a la fecha en que los referidos artículos fueron adoptados por nuestra asamblea legislativa no nos obliga, pero tiene para nosotros fuerza persuasiva. *Pueblo* v. *Pérez*, 59 D.P.R. 453. En California se ha resuelto reiteradamente, al igual que lo estamos haciendo nosotros ahora, que la muerte de una mujer producida bajo circunstancias similares a las descritas en las acusaciones ya mencionadas constituye el delito de asesinato en segundo grado. *People* v. *Schafer*, 198 Cal. 717, 247 Pac. 576; *People* v. *Wright*, 167 Cal. 1, 138 Pac. 349; *People* v. *Balkwell*, 143 Cal. 259, 76 Pac. 1017; *People* v. *Coltrin*, 5 Cal.2d 649, 55 P.2d

1161; *People* v. *Long,* 15 Cal.2d 590, 103 P.2d 969; *People* v. *Cook,* 93 C.A. 174, 269 Pac. 176; *People* v. *Brewer,* 19 C.A. 742, 127 Pac. 808; *People* v. *Card,* 40 C.A. 22, 180 Pac. 53; *People* v. *Wilson,* 54 C.A.2d 434, 129 P.2d 149; *People* v. *Smitherman,* 58 C.A.2d 121, 135 P.2d 674; *People* v. *Navarro,* 74 C.A.2d 544, 169 P.2d 265; *People* v. *Gómez,* 41 C.A.2d 249. Véase asimismo 26 Am. Jur. 288, donde al final del primer párrafo de la sec. 196 se dice que ''en aquellas jurisdicciones donde el delito de aborto es considerado por el estatuto como *felony* (como ocurre en Puerto Rico), la muerte de la madre constituye necesariamente un asesinato, a distinción de homicidio (*manslaughter*).'' El primer error no ha sido, por tanto, cometido.

■ Alega inmediatamente la acusada que ''el tribunal inferior erró al admitir, contra la oposición de la acusada, evidencia irrevelante e inmaterial, que no ayudaba en nada a la correcta resolución del caso y que, por el contrario, tendió a inflamar al jurado con prejuicio contra la acusada, por tender dicha evidencia a demostrar una comisión consuetudinaria por parte de ésta de otros delitos de aborto. . . .'' A Raquel Pizarro, quien para la época en que tuvieron lugar los hechos objeto de la acusación residía en casa de la acusada, se le preguntó por el fiscal si a casa de Laura E. Cirino en ocasiones anteriores iban algunas mujeres. La defensa se opuso y la corte declaró sin lugar la objeción. Entonces la testigo contestó que de tiempo en tiempo allí iban otras mujeres. Cuando se hizo a esa testigo la anterior pregunta, ya ella había declarado ampliamente respecto a la forma en que llegaron a la casa de la Cirino las señoras Georgina López Bonano y Antonia Cabán Agrón, así como que la acusada y estas mujeres habían penetrado en una habitación, el tiempo que habían estado en ellas, los utensilios que Laura E. Cirino llevó para la habitación, sobre los quejidos posteriores de dichas mujeres y el estado de gravedad en que cada una de

ellas había salido de la casa. La misma testigo dijo más tarde al ser repreguntada por la defensa, que a esa casa iban otras mujeres a coserse trajes y aun la propia Laura E. Cirino mientras ocupaba la silla testifical declaró que ella era comadrona y enfermera y que a su casa con frecuencia venían señoras a ponerse inyecciones. Si la defensa hizo a Raquel Pizarro una pregunta similar a la objetada y posteriormente la acusada misma declaró sobre el particular, ello equivalió a una renuncia de la objeción y el error, de haberse cometido, no fué perjudicial. *Pueblo* v. *Morales González*, 39 D.P.R. 30, 34 y *Pueblo* v. *Báez*, 45 D.P.R. 512, 518.

El tercer error imputado al tribunal inferior es haber permitido al testigo Dr. Ramón E. Llobet que declarase sobre autopsias practicadas a dos cadáveres, sin que éstos fuesen debidamente identificados como los de las mujeres cuyas muertes se imputan a la acusada. Al Dr. Llobet se le preguntó por el fiscal si había tenido ante sí para el día 2 de octubre de 1944 los cadáveres de Antonia Cabán Agrón y de Georgina López Bonano y si había rendido un informe. El testigo contestó afirmativamente. Al hacérsele otra pregunta al mismo efecto la defensa se opuso y la corte manifestó: "Se admite la objeción, que el fiscal identifique." Continuó declarando el testigo que en la indicada fecha él trabajaba en el Hospital Municipal de Santurce en su carácter de médico-cirujano; que recibió allí dos cadáveres de mujeres y les practicó la autopsia. Manifiesta entonces que en su informe hizo constar que conocía a esas dos personas, las que le "fueron identificadas por los empleados del hospital municipal. Depués por los familiares durante la autopsia." Esta identificación de los cadáveres en la forma en que fué hecha por el perito era claramente admisible en evidencia. Así lo ha resuelto este Tribunal en repetidas ocasiones. *Pueblo* v. *Díaz*, 68 D.P.R. 198; *Pueblo* v. *Rodríguez*, 62 D.P.R. 778 y *Pueblo* v. *Marrero alias "Moncho"*, 41 D.P.R. 951.

Como cuarto error alega la acusada que "los veredictos, las convicciones y las sentencias son contrarias a la prueba," ya que no se probó en el juicio (1) que las mujeres en quienes se practicaron los abortos estuviesen encinta; (2) que los abortos alegados no fueron necesarios para salvarles la vida a dichas mujeres y (3) que la acusada practicara abortos en ellas. El primer extremo quedó claramente demostrado con el testimonio del Dr. Llobet el cual, conforme ya hemos indicado era enteramente admisible. También hubo otra evidencia admisible al mismo efecto. Si bien sobre el segundo extremo no hubo evidencia directa, sin embargo, hay abundante prueba en los autos demostrativa de que Georgina López Bonano y Antonia Cabán Agrón eran mujeres jóvenes y disfrutaban de buena salud en los momentos en que se les practicó el aborto. La jurisprudencia es abundante al efecto de que en casos de esta índole, para demostrar que los abortos no fueron necesarios para salvar la vida a las mujeres, basta con demostrar que al momento de éstas someterse al tratamiento que culminó en su muerte eran jóvenes y gozaban de salud. Véanse *Pueblo* v. *García,* 64 D.P.R. 290, 292; *People* v. *Balkwell,* supra; *People* v. *Thompson,* 16 C.A. 748, 117 Pac. 1033; *People* v. *Brewer,* supra; *People* v. *Card,* supra. Respecto al tercer extremo, o sea que no se probó que la acusada practicara los abortos imputádosle, toda la prueba fué circunstancial. Esto casi siempre tiene que ser así debido a que la mujer en quien se practica el aborto, en casos como el presente, ha muerto. Sin embargo, el jurado tuvo ante su consideración amplia evidencia y llegó a la conclusión de que la acusada había cometido los delitos imputádosle. En los casos vistos ante jurado éste es el llamado a aquilatar la prueba (*Pueblo* v. *Rivas,* 68 D.P.R. 474, 480) y su apreciación de la misma no será alterada por nosotros a menos que se demuestre que cometió en ello manifiesto error o actuó movido por pasión, prejuicio o parcialidad. En los autos existe sufi-

ciente prueba para justificar los veredictos rendidos. *Pueblo* v. *Rivera,* 67 D.P.R. 194, 202; *Pueblo* v. *Carmona,* 67 D.P.R. 288, 291.

 Finalmente alega la acusada que el tribunal a quo cometió error al no instruir al jurado sobre el delito de aborto. Un examen de los autos revela que la defensa no solicitó instrucciones de clase alguna a este respecto y que, lejos de así hacerlo, al terminar de trasmitir la corte sus instrucciones al jurado, preguntó si había alguna otra instrucción adicional que las partes deseaban se trasmitiera al jurado, contestando la defensa negativamente. Bajo estas condiciones no puede la acusada quejarse de que no se dieran las instrucciones a que ahora hace referencia. *Pueblo* v. *Millán,* 66 D.P.R. 245 y casos citados a la pág. 254 y *Pueblo* v. *Díaz,* 63 D.P.R. 987. Se trataba en este caso de una acusación de asesinato en segundo grado. Instrucciones sobre aborto eran, por ende, improcedentes. Véanse *People* v. *Wright,* supra y *People* v. *Balkwell,* supra.

*No habiéndose cometido ninguno de los errores señalados, procede confirmarse la sentencia apelada.*