[Crim. No. 688.   Fourth Dist.   Nov. 21, 1950.]

## THE PEOPLE, Respondent, v. CLAYTON MIZE, Appellant.

Taylor F. Peterson for Appellant.

Fred N. Howser, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant Clayton Mize, together with defendants Briseno and Vivian, were charged with and convicted by a jury of the crime of armed robbery of one William Dodd. All were represented by counsel until time of trial. Defendant Mize then chose to act as his own attorney.

Dodd was a coowner of a store near Patton. On October 5, 1949, he withdrew $1,980 from the bank and placed it in a drawer in the counter of the store. About 2 p. m. a light green Mercury sedan drove up to the front of his store. The complaining witness and two others, a Mr. Parshley and a Mrs. Thompson, were in the store at the time. Three persons got out of the Mercury car. Mize, hereinafter referred to as defendant, was identified as the driver of the car. The complaining witness asked them if they wanted gasoline, which was sold in front of the store. They replied: "No," and asked if he had "coke" inside. Vivian and Briseno walked into the store and sat at the counter. Mize followed and asked to see some jam. When the complaining witness started to the location of the jam Mize followed him around the counter. When the complaining witness turned to ask him the brand desired Mize pulled a nickel-plated revolver on him and said: "I want your money. I want you to open the drawer." The complaining witness opened the drawer and handed over to Mize $2,000 in cash.

When Mize pulled the gun, Vivian ran to the front door and also drew a gun. Briseno escorted Mrs. Thompson into a corner and made her stay there. Mize took the money and told Dodd to lie down on the floor. The other witness was told to turn around and start walking. The three then left in the car. Mize was driving. The officers were called.

The complaining witness testified that he was absolutely positive and there was no doubt in his mind that the man who held him up was defendant Mize. Parshley identified Vivian as the one who came around the back of the car. When defendant came into the store he left the premises.

Mrs. Thompson corroborated Dodd's testimony and identified Mize as the one who held the gun on him and asked for the money. She also identified Vivian and the gun used by Mize.

Another witness testified that she was driving her car near Patton and saw a late model light green Mercury sedan about 500 feet west of the store and saw three people in the front seat but that she could not otherwise identify them.

A deputy sheriff, Shockley, testified he went to Sacramento with another deputy, Mathewson, where defendant Mize had been apprehended; that a nickel-plated revolver and a pair of dark glasses were found among defendant's property there; that on their return with defendant he was asked if that was the gun he used in the "Patton stick-up," and that Mize replied it was. He was asked who "cased the job" (looking over the store to see when the most money was there and the best hour to make the holdup), and Mize replied that he did. He was then asked who received the proceeds and he declined to implicate anyone else but stated that four parties received a portion of it. Deputy Sheriff Mathewson testified to these same facts and corroborated Deputy Sheriff Shockley's testimony.

Defendant did not testify in his own behalf but presented other witnesses. One testified that as he remembered it, Mize was wearing a beard around October 1, 1948, for the "Pioneer Days" celebration, and that defendant Vivian was with Mize on one occasion when they came to his oil station for gas.

Defendant called his father as a witness, who identified the gun in evidence as one purchased by defendant for his protection in prospecting for uranium. He also testified that defendant shaved his beard off about October 12, the date he left for Sacramento.

■ On appeal, through an attorney, defendant does not now question the sufficiency of the evidence to support the verdict, although it is argued that since the People's witnesses did not testify that Mize had whiskers on the occasion of the robbery, they must have been mistaken in their subsequent identification of him when he appeared without whiskers. The entire question of the sufficiency of defendant's identification was before the jury, and it decided that there was sufficient evidence connecting the defendant with the commission of the crime. The positive identification of the defendant by the witnesses, the circumstances presented, and the statements of the accused are most convincing evidence that defendant participated in the crime charged. ■ Defendant did endeavor to show, at the trial, by cross-examination of the officers, that the statements he made to them were obtained under claimed threats and duress. However, he did not take the witness stand and deny that such statements were made. The officers testified that no threats were made. Apparently the jury rejected defendant's contention that these statements were made under duress. The testimony in reference to these admissions or confessions was related on the witness stand, not only by Officer Shockley, whose testimony defendant claims was unworthy of belief, but also by Officer Mathewson, whose testimony stands unimpeached.

■ Defendant next claims error because he was foreclosed from offering evidence affecting the character of a witness who testified against him. Upon cross-examination of the complaining witness, defendant Mize asked the question:

"Your Honor, I would like to know if a person is judged solely on the evidence that happened at the crime or upon anything introduced to show the man's character.

"The Court: Mr. Mize, every defendant in a criminal action is presumed innocent until otherwise proven. His character is not in issue unless he elects to put it in issue.

"Mr. Mize: What I wanted brought out, Your Honor, if there is an undesirable character, can that be brought during the trial as to the truth of his testimony?

"Mr. Turner: Perhaps it might be wise, Your Honor, to have the afternoon recess at this time and we could all get together with Mr. Mize as to what he has in mind and advise him a little better."

A recess was then taken. Then followed a statement by

defendant, in the absence of the jury, that he wanted to bring out some hearsay evidence that Dodd had been sued for overcharging and swindling people in that neighborhood and that there was some "slight evidence" that he was running a gambling game. The court in effect told the defendant that that had no bearing on the case; that his reputation for truth, honesty and integrity was not in issue in the case upon matters "that are not material to the trial itself." Then it added the statement that "*you cannot impeach him by proving a reputation for lack of truth, honesty or integrity in this particular case.*" The defendant complains of the statement italicized.

It is true that an adverse witness may be impeached by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of positive wrongful acts. (Code Civ. Proc., § 2051.) Apparently this is what the trial judge had in mind in making the general statement as reflected by the record. Following this statement the defendant remarked:

"What I want to know, I have never been convicted of a felony, because I am a prisoner, because I am out on bond is my word as good as his and will the court instruct the jury that it is?" The Court remarked: "I will instruct the jury to that effect." MR. MIZE: "That clears up a lot in my mind. . . ."

Then followed an instruction to the jury on the presumption of innocence. Defendant never offered any witness on the question of Dodd's reputation for the traits involved. The defendant was apparently satisfied with the court's instruction that followed. No prejudicial error resulted.

It is next argued that the trial court erred in refusing defendant the right to show his purpose in leaving San Bernardino to go to Sacramento soon after the robbery. Defendant asked his father, while on the witness stand:

"Q. Mr. Mize, what was the purpose of the defendant going to Sacramento?"

The trial court held the question objectionable. Then followed the question:

"Did the defendant go to Sacramento to look for a job?"

Objection was sustained as calling for a conclusion of the witness. Defendant complains because the district attorney accused him of flight; that since the jury was instructed on that subject, it was prejudicial error to sustain the objection to the question since defendant's father went with the de-

fendant and knew that he went to Sacramento to look for a job. The question as framed called for a conclusion of the witness. (*People* v. *Nihell,* 144 Cal. 200, 203 [77 P. 916].) The facts, if any, known by the witness in respect to defendant's purpose in going to Sacramento were not solicited from the witness, and defendant did not testify on the subject. No prejudicial error resulted. (*People* v. *Alcalde,* 24 Cal.2d 177, 187 [148 P.2d 627].)

It is next argued that since the trial court gave a stock instruction on circumstantial evidence, it was error to refuse defendant's instruction qualifying that instruction in respect to the burden of proof. The proffered instruction involved a case which rested *entirely, chiefly or wholly on circumstantial evidence,* as indicated in *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8]; and *People* v. *Navarro,* 74 Cal.App. 2d 544 [169 P.2d 265]. This is not such a case. It is quite apparent that the evidence in the instant case was not entirely or chiefly circumstantial, but rested chiefly on direct evidence. Therein lies the distinction. (*People* v. *Walker,* 99 Cal.App.2d 238, 245 [221 P.2d 287].)

It is next complained because the court refused as "repetitious" a proffered instruction of the defendant to the effect that while it was the duty of the prosecution to prove defendant's guilt beyond a reasonable doubt, "any fact on the part of the defense needs only to be established sufficiently to create a reasonable doubt of the defendant's guilt, when taken into consideration with the rest of the evidence in the case."

The argument is that in effect all the instructions which the court gave were directed to the amount and degree of proof needed to convict, while none was applicable to either degree or amount of proof needed to produce a reasonable doubt, and that therefore the refusal to instruct as requested was erroneous and prejudicial, citing *People* v. *Hardy,* 33 Cal.2d 52, 64 [198 P.2d 865]. The jury was instructed that "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal . . . ." Then follows the definition of reasonable doubt, as defined in Penal Code, section 1096. This was followed by an instruction that "If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his in-

nocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt." The proffered instruction was properly refused. (Pen. Code, § 1096a.)

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.