[Crim. No. 754.   Fourth Dist.   June 15, 1951.]

THE PEOPLE, Respondent, v. ROBERT J. MIDDLE-
WORTH, Appellant.

Robert J. Middleworth, in pro. per., for Appellant.

Edmund G. Brown, Attorney General and Elizabeth Miller, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged in an information with, and convicted by a jury of the crime of issuing a check for $15.80 with intent to defraud.   He admitted three prior convictions:  (1) of robbery, first degree;  (2) violation of section 6201 of the Government Code; and  (3) of forgery, and of serving time on each charge in the state's prison at San Quentin.

On March 10, 1950, he was sentenced to state's prison on the instant charge, sentence to run consecutively in relation to the unexpired portion of defendant's previously existing sentence. No appeal was taken from the judgment.

Now, on September 11, 1950, defendant, in propria persona, filed in the Superior Court of San Diego County an application for a writ of error *coram nobis* alleging errors which may be summarized as follows: (1) that he was "unjustly and unlawfully convicted" in that he did not intend to defraud the bank upon which the check was drawn; (2) that he was "denied and deprived" of a fair and impartial trial, in violation of article I section 13 of the Constitution of California, the "Fourteenth Amendment, Section 1, of the United States Constitution," and sections 476a and 1203 of the Penal Code in that his counsel and the district attorney "connived and conspired" to keep and withhold evidence from the trial court; (3) that the district attorney held conversations with the jurors during the trial and poisoned their minds against him; and (4) that the trial court, although it granted a "probation hearing," "denied probation," because the "district attorney submitted evidence of defendant's prior convictions." As we construe defendant's contentions in his brief, in effect, he wants the judgment of his conviction set aside and a new trial ordered, so that he may be allowed to subpoena certain named witnesses in defense of his claimed innocence.

Defendant filed several of his own affidavits in support of his contentions, in which he stated that his wife opened a joint account and received a joint account signature from the bank for the purpose of "identifying checks"; that he agreed to "waive a single account" of his own, and that he and his wife agreed to form a joint account "for both of them"; that he went to the bank before going to Nevada to divorce his wife and receive a checkbook; that he was instructed by the clerk at the bank to cross off the words "Main Office" from the checks and write in the branch at which he had his account; that he failed to do this because he was nervous due to the threatened divorce proceeding and "overlooked many trifling" matters; that he issued these checks in good faith, without intent to defraud the bank; that he had sufficient funds in his personal account to cover all of his personal checks and that his wife had failed to inform him that she had overdrawn the account. He insists that the bank statements and records were not introduced properly in court

as evidence and were not properly examined by his own attorney because his attorney and the district attorney conspired to withhold such evidence. He claims that he now has possession of the statements and records of the bank to support his contention that he did not intend to defraud the bank and that this evidence would establish his innocence, and that he can now prove that "funds and credits to his account were in financial soundness and financially good." He asserts on appeal that his mother asked that she be permitted to testify at the trial but both his attorney and the district attorney refused to allow her to do so and that the judge refused to grant him a hearing on his application for probation because the district attorney submitted evidence of prior convictions.

The trial judge who tried the original case and who was familiar with the facts did, on September 13, 1950, hear the matter, and considered the authorities and affidavits presented. He then signed an order which recites: ". . . .it appearing to the court that said application is without merit and that there is no legal cause shown why said application should be granted, the same is hereby denied."

█ As will be noted, many of the matters urged by the defendant as grounds for the issuance of the writ should have been considered on an appeal from the judgment or on a motion for a new trial, and .therefore furnish no basis for the issuance of the writ of error *coram nobis*. (*People* v. *Chapman*, 96 Cal.App.2d 668, 670 [216 P.2d 112]; *People* v. *Egan*, 73 Cal.App.2d 894, 900 [167 P.2d 766]; *People* v. *Bailey*, 91 Cal.App.2d 578, 581 [205 P.2d 418]; *People* v. *Navarro*, 74 Cal.App.2d 544, 552 [169 P.2d 265]; *People* v. *James*, 99 Cal.App.2d 476 [222 P.2d 117].)

There is no showing, other than the conclusion of the defendant, as stated in his affidavit, that defendant's counsel and the district attorney ever conspired to keep and withhold any competent or material evidence from the trial court. Any facts that were then known to defendant could well have been brought to the attention of the trial court at the time of trial or on a motion for new trial. █ Unless the claimed matters, which were apparently then known to defendant, were called to the attention of the trial court, defendant may not, after the judgment of conviction has become final, raise such question for the first time by means of a writ of error *coram nobis*. See *People* v. *Shorts*, 32 Cal.2d 502, 507 [197 P.2d 330]; and *People* v. *Adamson*, 34 Cal.2d 320, 326 [210 P.2d 13], where the limitations of review by way of writ of error *coram nobis*

are defined, the court saying it is a "remedy of narrow scope. . . . Its purpose is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court"; and that an "applicant for the writ 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ; otherwise he has stated no ground for relief.' "

It does not appear what facts were known to defendant's mother or that such facts as were known to her were relevant to the issue presented at the time of trial. There is no sufficient showing that defendant was prejudiced by the failure to produce any of the witnesses mentioned or by the failure to produce the evidence referred to in defendant's affidavit. Any understanding that defendant's counsel and the district attorney may have had in reference to the presentation of the evidence to the court, if such evidence were irrelevant and immaterial, would not constitute a conspiracy. The court was informed of the previous felonies committed by defendant by virtue of the information charging them and the defendant's admission of such charges. Probation was properly denied. (Pen. Code, § 1203.) Since the claimed grounds set forth by defendant for his release by means of a writ of error *coram nobis* were properly held to be insufficient, the trial court was justified in denying the writ.

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.